UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT E. ANDERSON,

       Plaintiff,

      v.                                   Case No. 16-C-1543

ELIZABETH SCHROEDER, et al.,

       Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Robert Anderson, an inmate currently serving a state prison sentence at Stanley Correctional Institution and representing himself, filed this action under 42 U.S.C. § 1983 alleging violations of his civil rights while he was incarcerated at Waupun Correctional Institution (WCI). Anderson alleges that the defendants were deliberately indifferent to his serious medical need for treatment of pain arising out of a shoulder injury, and the majority of his allegations focus on the defendants' actions during two 32-day periods between August and September 2016 and November and December 2016. He also raises a state law medical malpractice claim against Defendant Dr. Salam Syed. This matter comes before the court on two motions for summary judgment, one by Defendant Elizabeth Schroeder (ECF No. 93) the other by Defendants Dr. Ryan Holzmacher, Emily Stadtmueller, Crystal Marchant, Donna Larson, and Dr. Syed (collectively, the "State Defendants") (ECF No. 99).[1] For the reasons set forth below, both motions will be granted.

---

[1] During briefing on these motions for summary judgment, the court granted Anderson's motion for a 30-day extension of time to respond to the State Defendants' motion for summary judgment. ECF No. 112. In response, the State Defendants' requested a revised briefing schedule to permit them additional time to file a reply brief. ECF No. 113. The court took that request under

## BACKGROUND

Both Schroeder and the State Defendants submitted proposed findings of fact in support of their motions for summary judgment, as required by Civil Local Rule 56(b)(1)(C). ECF Nos. 95, 103. Although Anderson has submitted a declaration and a statement disputing several of the State Defendants' proposed findings of fact (ECF Nos. 116, 118), he has not disputed the vast majority of the State Defendants' proposed findings, and he has not submitted any response at all to Schroeder's proposed findings. Because Anderson received proper notice and warnings from both Schroeder and the State Defendants regarding the consequences of failing to respond to their proposed findings of fact, the court will treat as undisputed the portions of the statements to which Anderson did not respond. Civil L.R. 56(a)(1)(A), (b)(4) (E.D. Wis.); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Anderson suffers from degenerative joint disease (osteoarthritis) in his left shoulder, and this cases arises out of his efforts to obtain treatment for associated pain while incarcerated at WCI. State Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, 12, ECF No. 103. His chronic pain is caused by inflammation of the shoulder joint. *Id.* ¶ 15. Between 2014 and 2017, Anderson had several appointments with Dr. Thomas Grossman at Waupun Memorial Hospital regarding his left shoulder. DPFOF ¶¶ 18–45. Dr. Grossman's care for Anderson included a left-shoulder surgery in July 2014

---

advisement, noting that it would determine whether a reply from the State Defendants was necessary after Anderson filed his response brief. ECF No. 115. The court has determined that a reply brief is not necessary; therefore, this matter is ready for decision.

during which he attempted to repair a torn rotator cuff, a second surgery attempting to repair the rotator cuff in August 2015, and a third surgery primarily to remove an extruding screw in July 2016. *Id.* ¶¶ 18–19, 21, 36 (citing ECF No. 104-1 at 6–7, 17–19, 22). By the third surgery, Dr. Grossman made clear to Anderson that his rotator cuff likely could not be repaired. *Id.* ¶ 35 (citing ECF No. 104-1 at 8–9). After both the second and third surgeries, Dr. Grossman recommended that Anderson take 2 Vicodin every 4 hours to manage his pain. *Id.* ¶ 22, 37 (citing ECF No. 104-1 at 7–9, 18).

During a follow-up appointment in September 2016 regarding the third surgery, Dr. Grossman recommended that Anderson receive "better analgesia," which he noted was the responsibility of WCI. *Id.* ¶ 42 (citing ECF No. 104-1 at 4–5). To that end, Dr. Grossman recommended a lidocaine patch or, if that proved ineffective, a corticosteroid injection. *Id.* ¶ 42. Dr. Grossman declares that he does not recall discussing specific treatments with Anderson, including treatment with narcotic pain medication, during the September 2016 appointment, and he notes that current guidelines recommend against the use of narcotic pain medication to treat chronic pain like Anderson's. *Id.* ¶ 43 (citing ECF No. 104 ¶ 26).

Anderson's claims focus on the treatment he received at WCI during two 32-day periods in the months after his surgery: the first between August and September 2016, and the second between November and December 2016. With regard to the first 32-day period of alleged lack of treatment, Anderson contends that Defendant Elizabeth Schroeder prescribed him a topical gel for his shoulder pain but she and Defendants Emily Stadtmueller and Crystal Marchant were deliberately indifferent as a result of a long delay in providing him with the gel. As for the second 32-day period, he contends that Defendant Dr. Salam Syed was deliberately indifferent by failing to continue his

prescription for Tramadol, only to briefly reinstate the prescription several weeks later. Anderson further alleges that Defendant Donna Larson was deliberately indifferent to his serious medical needs when she examined him in February 2017. Finally, Anderson alleges that Defendant Dr. Ryan Holzmacher was deliberately indifferent in his administrative oversight capacity within the Department of Corrections (DOC). Additional undisputed factual material will be discussed with regard to each of these defendants in greater detail as part of the analysis that follows.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### I. Deliberate Indifference

A plaintiff may prevail on a claim for relief under 42 U.S.C. § 1983 by showing that he was (1) deprived of a federal right (2) by a person acting under color of state law. *Gomez v. Toledo*, 446

U.S. 635, 640 (1980). "The Supreme Court has interpreted the Eighth Amendment's prohibition of cruel and unusual punishment, incorporated through the Fourteenth Amendment, as imposing a duty on states to provide medical care to incarcerated individuals," and prison officials violate that duty if they are deliberately indifferent to a prisoner's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "A prison official may be liable for deliberate indifference only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Chatham v. Davis*, 839 F.3d 679, 684 (2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To succeed on a deliberate indifference claim, a prisoner must therefore prove that he "suffered from '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Crucially, an inmate alleging deliberate indifference must "show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). This means that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle*, 429 U.S. at 107); *see also Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). Although "a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference," a plaintiff succeeds in proving the second prong only if the prison official's conduct was "'so blatantly inappropriate as to evidence intentional mistreatment likely to

seriously aggravate' a medical condition." *Edwards*, 478 F.3d at 831 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Even assuming that Anderson's pain constituted a serious medical condition, none of the defendants possessed the subjective state of mind necessary to be liable for deliberate indifference.

### A. Emily Schroeder

Advanced Practice Nurse Prescriber (APNP) Emily Schroeder treated Anderson throughout 2016 while at WCI on a locus tenens assignment. Schroeder Proposed Findings of Fact (Schroeder PFOF) ¶¶ 5, 11–66, ECF No. 95. In anticipation of Anderson's third surgery in July 2016, Schroeder prescribed Tramadol to him 4 times daily for 10 days after the surgery. *Id.* ¶ 27; *see also* ECF No. 96-2 at 10. After the surgery, Schroeder approved of Dr. Grossman's treatment recommendations, including a prescription of Vicodin for pain. Schroeder PFOF ¶¶ 29–30; *see also* ECF No. 96-2 at 10.

On August 15, 2016, Schroeder ordered several ongoing treatments for Anderson's post-operative shoulder care, including Voltaren gel twice daily for 6 months. Schroeder PFOF ¶ 36; *see also* ECF No. 96-2 at 9. Schroeder prescribed the Voltaren in an effort treat his shoulder pain using a new drug. *Id.* ¶ 38 (citing ECF No. 97-1 at 11). On August 25, 2016, Schroeder entered an order clarifying the diclofenac (the generic name of Voltaren) gel order, explaining that a nurse should clarify for Anderson that he should use 4 grams at a time, and no more than 32 grams per day, on his left shoulder. *Id.* ¶ 43 (citing ECF No. 96-2 at 8). That same day, she directed that Anderson receive a follow-up appointment in 2 months to evaluate the effectiveness of the treatment. *Id.* ¶ 44. Also that day, Anderson submitted a Health Service Request (HSR) form inquiring about the status of various prescriptions, including the diclofenac; the responding nurse explained that it had not

arrived from the pharmacy yet. *Id.* ¶¶ 45–46 (citing ECF No. 96-2 at 22). Anderson also submitted an HSR form on August 30, 2016, raising concerns about side effects and interactions with his other medication as a result of the Voltaren gel. *Id.* ¶ 48 (citing ECF No. 96-2 at 23). Schroeder reviewed it the next day and replied, "Try it. Or not up to you. It is safe to take but if symptoms develop stop taking." *Id.* ¶¶ 49–50. Anderson eventually received the Voltaren no later than mid-September. ECF No. 97-1 at 12.

Based on the undisputed facts, Anderson cannot satisfy the subjective prong of the deliberate indifference test with regard to Schroeder. After Schroeder prescribed the Voltaren gel on August 15 and clarified the prescription on August 25, there is no dispute that Anderson did not subsequently alert her to delay in its delivery, such as in his August 30 HSR form. Although "an inexplicable delay in treatment which serves no penological interest" can provide a basis for finding deliberate indifference, *Petties*, 836 F.3d at 730–31 (citing cases), APNP Schroeder cannot be liable for a delay of which she was not aware.

What is more, the undisputed facts show that, to the extent she was aware of Anderson's complaints of pain, Schroeder actively worked to identify an appropriate means to abate it in the months following his third surgery in July 2016. In anticipation of the surgery, she prescribed a 10-day course of Tramadol to manage his pain afterwards, and she approved of Dr. Grossman's recommendation that he receive a Vicodin prescription immediately after the surgery. As his pain management entered a more long-term phase in August and September, APNP Schroeder not only prescribed the Voltaren gel in an effort to identify a new method for treating Anderson's shoulder pain but also prescribed ice four times daily, an extra towel for applying heat, extra pads for his

7

TENS unit (which provides electrical stimulation to alleviate pain), and a lidocaine patch. Schroeder PFOF ¶ 41 (citing ECF No. 96-2 at 4–5).

Schroeder did not inappropriately persist in an ineffective course of treatment, either. *See Petties*, 836 F.3d at 729–30 ("Another situation that might establish a departure from minimally competent medical judgment is where a prison official persists in a course of treatment known to be ineffective." (citing *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000))). Over the course of September and October 2016—after the 32-day period in which Anderson alleges Schroeder was indifferent to his pain—she prescribed a corticosteroid injection for his left shoulder and daily Tylenol each morning. Schroeder PFOF ¶¶ 55, 60. And on October 12, 2016, responding to Anderson's reports that Tramadol had been the most effective medication for treating his pain, Schroeder prescribed Tramadol three times daily for one month, with instructions to follow up in three weeks to assess whether applying to the DOC for permission to use Tramadol as a long-term treatment would be appropriate. *Id.* ¶¶ 64–66. As a result, Anderson received Tramadol between October 13, 2016, and November 12, 2016, before Schroeder left WCI. *Id.* ¶ 66–67. Against this backdrop—in which Schroeder anticipated Anderson's need for pain medication after his surgery, was not made aware of the delay in delivery of the topical gel she prescribed, and ultimately prescribed the Tramadol he sought, if only temporarily—no jury could reasonably conclude that she exhibited subjective indifference to Anderson's pain, and his claims against her will be dismissed.

**B. Dr. Salam Syed**

Dr. Syed first examined Anderson on September 28, 2016, and treated him regularly until May 2, 2017. DPFOF ¶¶ 115, 133 (citing ECF No. 105-1 at 33–34). He also examined Anderson on November 11, 2016, the day before Anderson's month-long Tramadol prescription from

Schroeder was scheduled to expire. *Id.* ¶ 117 (citing ECF No. 105-1 at 31–32). When Anderson requested a continuation of the Tramadol prescription, Dr. Syed declined, explaining that he did not believe that long-term use of narcotics would help Anderson's shoulder pain. *Id.* Because Anderson experienced chronic pain caused by inflammation, Dr. Syed believed NSAIDs provided a better means for addressing Anderson's long-term pain. *Id.* ¶ 119. At another appointment on December 14, 2016, however, Dr. Syed did prescribe a short-term Tramadol dose to improve Anderson's range of motion and assist him with exercising as part of activity monitoring, although Anderson notes that he was not sent to physical therapy at that time. *Id.* ¶ 123; Anderson Statement of Disputed Factual Issues (Anderson SDF) ¶ 123, ECF No. 116. Anderson argues that Dr. Syed was deliberately indifferent to his serious medical needs during the 32-day period between November 12, 2016, when his Tramadol prescription ended, and December 14, 2016, when Dr. Syed gave him the short-term Tramadol prescription.

Fundamentally, Anderson disagrees with Dr. Syed's chosen course of treatment for him: Anderson sought Tramadol for his chronic pain, but Dr. Syed determined that a narcotic would not be appropriate for long-term treatment and limited its use to short durations of time. Although Dr. Syed departed from Schroeder's decision to prescribe Tramadol for 30 days as a possible long-term treatment option, "[m]ere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (citing *Estelle*, 429 U.S. at 107). In a case where a prisoner's primary physician originally prescribed narcotic pain medication for post-surgical pain, the Seventh Circuit recently affirmed a grant of summary judgment to medical providers on the grounds that "no reasonable jury could conclude that the failure to prescribe narcotic pain medication or contact a

9

doctor who would prescribe it amounted to deliberate indifference." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). A doctor's refusal to prescribe a narcotic reflects deliberate indifference only if it is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).

Here, the undisputed facts show that professional standards of medical judgment recommend against using any opioid medication—a category that includes Tramadol—to treat long-term pain. DPFOF ¶¶ 68, 70 (citing ECF No. 106-1, 106-2). Consequently, Dr. Syed's decision not to prescribe Anderson Tramadol on a long-term basis did not reflect the departure from acceptable professional judgment necessary to prove deliberate indifference. Moreover, the undisputed facts also show that, far from leaving Anderson to languish in pain without the Tramadol (which Dr. Syed *did* prescribe for a short period of time in December 2016), Dr. Syed continued or instituted several other pain treatments for Anderson, including Tylenol, Gabapentin, ibuprofen, ice, lidocaine cream, an extra pillow, a low bunk restriction, and corticosteroid injections. *Id.* ¶ 118; *see also* Anderson SDF ¶ 118 (objecting to other treatments that defendants attribute to Dr. Syed). The fact that Dr. Syed did not provide Anderson with the particular long-term treatment that he desired does not mean that Dr. Syed was deliberately indifferent to his serious medical needs. *See Thomas v. Wahl*, 590 F. App'x 621, 624 (7th Cir. 2014) ("Thomas's desire for narcotic pain medication does not create a triable fact issue because no reasonable jury could conclude that Dr. Carter's conservative treatment after the second surgery—including physical therapy, pain-relieving balm, low bunk permits, and four different pain medications—amounted to deliberate indifference."). Because the

undisputed facts show that Dr. Syed was not subjectively indifferent to Anderson's serious medical needs, Anderson's constitutional claims against him will be dismissed.

### C. Emily Stadtmueller, Crystal Marchant, and Dr. Ryan Holzmacher

Anderson next brings claims against Defendants Stadtmueller, Marchant, and Dr. Holzmacher, alleging that they knowingly failed to intervene to be sure that he received appropriate pain medication during the 32-day period between August and September 2016 when he was not receiving the Voltaren gel and the 32-day period between November and December 2016 after Dr. Syed discontinued his Tramadol prescription.

Dr. Holzmacher was the Medical Director of the Bureau of Health Services (BHS) within the DOC, and he worked out of the DOC Central Office. DPFOF ¶ 2. Although the DOC maintains a committee of medical professionals that reviews certain medical treatment measures—such as a physician's request to treat a patient using opioids for more than three months at a time—Dr. Holzmacher is not a part of that committee. *Id.* ¶¶ 46–50. However, in his capacity as BHS Medical Director, Dr. Holzmacher did review off-site treatment requests for Anderson. *Id.* ¶¶ 46, 54–59. But he was not personally involved in assessing Anderson or providing him medical care or treatment, and he never personally interacted with Anderson. *Id.* ¶¶ 58, 64. Dr. Holzmacher reviewed various treatment requests from Anderson's treatment providers in 2015 and 2016, but he never received any correspondence or other complaint notifications from Anderson alleging that he was not receiving appropriate treatment or medication for his pain during late 2016. *Id.* ¶ 65.

Stadtmueller and Marchant are both licensed as registered nurses, and each served as manager of the Health Services Unit (HSU) at WCI. *Id.* ¶¶ 4–5. Stadtmueller was the manager between February 2016 and the beginning of September 2016, and Marchant was the manager

11

beginning on December 11, 2016. *Id.* At WCI, the HSU nursing staff triage HSR forms submitted by inmates, forwarding some to the HSU manager. *Id.* ¶¶ 72–73. When Stadtmueller and Marchant received an HSR form from Anderson forwarded by the nursing staff, they reviewed the medical chart, any prior HSR forms, and progress notes, and they spoke directly with his providers if they had any follow-up questions. *Id.* ¶ 78. As relevant to Anderson's complaint, Stadtmueller received and responded to correspondence from him on August 22 and August 30, 2016, and Marchant received and responded to correspondence from him on November 9, 14, 18, and 21, 2016, as well as December 8, 2016. *Id.* ¶¶ 79–80 (citing ECF No. 105-1 at 341, 349, 352, 354–55, 370, 398, 407).

To the extent that Anderson argues that Stadtmueller, Marchant, and Dr. Holzmacher should be liable in their respective supervisory capacities, his claims are foreclosed by firmly established law, as a supervisory official cannot be cannot be vicariously liable under § 1983. *Daniel v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016). A prison official may, however, be directly liable for his or her own deliberate indifference to an inmate's serious medical need. Specifically, "[d]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996)). But the record establishes that neither Stadtmueller nor Marchant nor Dr. Holzmacher acted with deliberate indifference to Anderson's pain. It is undisputed that, until Anderson filed this lawsuit, Dr. Holzmacher was unaware of Anderson's claim that he was denied medication. DPFOF ¶ 66. In the absence of Dr. Holzmacher having actual knowledge of the alleged indifference to Anderson's need for pain medication, Anderson's claims against him necessarily fail and will be dismissed.

The absence of knowledge of the alleged indifference also dooms Anderson's claims against Stadtmueller and Marchant. Anderson's August 22 HSR form reviewed by Stadtmueller refers to a letter not contained in the record, but the response from Stadtmueller notes that his Voltaren gel order was in process and reminds him that the July prescription for Tramadol was only for the 10 days after his surgery. ECF No. 105-1 at 407. His August 30 complaint merely raises concerns about potential side effects of the Voltaren gel and makes no claim that he had not received treatment for his pain; Stadtmueller's response explains that trying Voltaren gel is part of a process by his providers to identify the most appropriate means for treating his pain. *Id.* at 398. Anderson's request forms and Stadtmueller's responses show that she responded to his complaints within a day, was familiar with his medical record and the treatments he was receiving, and was not made aware that Anderson had not received the Voltaren gel within a few days of Schroeder writing the prescription. Because Stadtmueller therefore did not have knowledge of Anderson's alleged lack of pain medication and took quick action on the information she received, Anderson's deliberate indifference claims against her will be dismissed.

As for the complaints that Marchant received in November and December 2016, Anderson consistently objected to Dr. Syed's decision to stop his Tramadol prescription, and Marchant consistently responded by noting that he was scheduled for an appointment with a provider to discuss pain management for his shoulder. DPFOF ¶¶ 80–82 (citing ECF No. 105-1 at 341, 349, 352, 354–55, 370). Although these complaints put Marchant on notice of Anderson's frustration with Dr. Syed's treatment decision, Marchant's review of the Anderson's medical file indicated that he was being treated for pain and regularly seeing providers with the authority to prescribe various remedies for it. *Id.* ¶¶ 86–88. But the court has already determined that Dr. Syed's decision to

13

deviate from Schroeder's approach and stop the Tramadol prescription was not an act of deliberate indifference, and Marchant therefore cannot be liable for failing to intervene to stop Dr. Syed's discretionary treatment decision. Accordingly, Anderson's claims against Marchant will also be dismissed.

### D. Donna Larson

Finally, Anderson alleges that Defendant Donna Larson, a registered nurse employed at WCI, was deliberately indifferent to his serious medical needs in early 2017. Larson examined Anderson on only a single occasion, a January 17, 2017 appointment regarding his shoulder pain. DPFOF ¶ 92. During the appointment, Anderson stated that he could not do anything because of his shoulder pain, asked to be submitted to the pain committee, and repeated his claim that the only effective treatment for his shoulder pain was Tramadol. *Id.* (citing ECF No. 105-1 at 29–30). The progress notes for the appointment indicate that by this time Anderson was not using the lidocaine gel, was allergic to the diclofenac (Voltaren) gel, and found muscle rubs, capsaicin cream, and the TENS unit ineffective on his shoulder. *Id.* ¶ 93. Although Larson instructed Anderson to continue with his current treatment plan and said that she would refer Anderson to a physician for continued pain management, she did not have authority to refer him to the pain committee. *Id.* ¶ 94–97. After the appointment, Larson conferred with both Dr. Syed and the interim Health Services Manager regarding Anderson's condition. *Id.* ¶¶ 97–98.

Following an appointment with Dr. Syed (who declined to prescribe Anderson Tramadol or refer him to the pain committee), Anderson submitted an HSR form addressed to Larson on January 24, 2017, complaining that nobody was doing anything about his shoulder plain. *Id.* ¶¶ 100 (citing ECF No. 105-1 at 323). Larson did not respond, and there is no indication that she ever received

14

Anderson's HSR form. *Id.* ¶ 101. The note from the person who did respond stated, in part: "Life has aches and pains. No life is entirely pain free. If you have a chronic problem causing pain it is unrealistic to expect to be pain free. Chronic narcotics not indicated." *Id.* ¶ 100.

Under these circumstances, Larson's actions do not reflect deliberate indifference to Anderson's serious medical needs. "[N]urses may generally defer to instructions given by physicians," although they do have "an independent duty to ensure that inmates receive constitutionally adequate care." *Perez*, 792 F.3d at 779 (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). "[A] nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority." *Id.* (quoting *Berry*, 792 F.3d at 779). In her capacity as a nurse evaluating Anderson, Larson reasonably deferred to the ongoing treatment plan established by Dr. Syed. At the same time, in light of Anderson's persistent complaints about his shoulder pain, she discussed the matter with both Dr. Syed and the interim Health Services Manager. The fact that Larson actively followed up on and made inquiries about Anderson's treatment on the sole occasion she examined him indicates that she was not deliberately indifferent to his serious medical needs. Anderson's claims against her will therefore be dismissed.

## II. Medical Malpractice

In addition to his constitutional claims, Anderson raises a state law medical malpractice claim against Dr. Syed. The court has jurisdiction over this claim under 28 U.S.C. § 1367. "Under Wisconsin law, medical malpractice has the same ingredients as garden-variety negligence claims: the plaintiff must prove that there was a breach of a duty owed that results in an injury." *Gil v. Reed*,

535 F.3d 551, 557 (7th Cir. 2008) (citing *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860). "In most cases, Wisconsin law requires expert testimony to establish medical negligence, although *res ipsa loquitur* can substitute for expert testimony." *Id.* (first citing *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004); then citing *Christianson v. Downs*, 90 Wis. 2d 332, 279 N.W.2d 918, 921 (1979); then citing *Richards v. Mendivil*, 200 Wis. 2d 665, 548 N.W.2d 85, 89 n.5 (Ct. App. 1996)). Anderson has not designated a medical expert, and at his deposition he admitted that no medical provider has criticized the treatment that Dr. Syed provided to him. DPFOF ¶ 136 (citing ECF No. 97-1 at 20). Absent an expert opinion, Anderson's medical malpractice claim against Dr. Syed necessarily fails unless *res ipsa loquitur* applies.

In a medical malpractice action, a plaintiff may proceed on a *res ipsa loquitur* theory if "(1) there is evidence that the event in question would not ordinarily occur unless there was negligence; (2) the agent or instrumentality that caused the harm was within the defendant's exclusive control; and (3) the evidence allows more than speculation but does not fully explain the event." *Richards*, 200 Wis. 2d at 674, 548 N.W.2d at 89 (citing *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 17, 496 N.W.2d 226, 228 (Ct. App. 1993)). The doctrine is meant to apply in place of expert testimony "in situations where the errors were of such a nature that a layperson could conclude from common experience that such mistakes do not happen if the physician had exercised proper skill and care." *Id.* at 673, 548 N.W.2d at 89 (citing *McManus v. Donlin*, 23 Wis. 2d 289, 297, 127 N.W.2d 22, 26 (1964)). At a minimum, Anderson cannot satisfy the first element of the doctrine, however, because his injury—chronic pain—occurred not as a result of Dr. Syed's obvious negligence but as a

consequence of a shoulder injury and three resultant surgeries. With no expert opinion or ability to proceed on a *res ipsa* theory, Anderson's state law medical malpractice claim will also be dismissed.

## CONCLUSION

For the foregoing reasons, Schroeder's motion for summary judgment (ECF No. 93) and the State Defendants' motion for summary judgment (ECF No. 99) are both **GRANTED**. Although the State Defendants raise the defense of qualified immunity in their brief, the court need not reach that argument because it concludes that they are entitled to summary judgment on the merits of Anderson's claims. This action is **DISMISSED**, and the Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 26th day of June, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court